FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2020 JAN 27 A 9:20
CLERK'S OFFICE
AT GREENBELT
BY ____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Tanveer S. Majid,
18903 Abbey Manor Drive
Brookeville, MD 20833-3247

Plaintiff,

v.

Central Intelligence Agency (CIA),
1000 Colonial Farm Road
McLean, Virginia, 22101

Defendant

Civil Action No. DKC 20 CV 0233

********

## COMPLAINT FOR INJUNCTIVE AND MONENTARY RELIEF

Now Comes Tanveer S. Majid (Plaintiff) for his complaint against the Central Intelligence Agency (Defendants), declares the following:

## INTRODUCTION

1. This is a civil action for injunctive and monetary relief for the substantial emotional distress inflicted upon the Plaintiff by the Central Intelligence Agency in violation of United States Constitution and Federal Laws. This action is brought to enforce significant and ongoing violations of the United States Constitution and Federal Laws, that is placing the Plaintiff at significant and immediate risk of harm, and continuous emotional distress.

## JURISDICTION

2. This Court has jurisdiction over the claims set forth in this complaint pursuant to 28 U.S.C. § 1331.

**VENUE**

3. Venue is properly vested in this Court under Section 28 U.S.C. § 1391(e).

**PLAINTIFF**

4. Plaintiff is a thirty-six (36) year old resident of the State of Maryland domiciled in the county of Montgomery at 18903 Abbey Manor Drive, Brookeville, Maryland 20833-3247. The Plaintiff is a graduate of the University of Maryland – College Park with a Bachelor of Science in Geography – Geographic Information Sciences and Computer Cartography.

**DEFENDANT**

5. Central Intelligence Agency - 50 U.S. Code § 3035, is a Federal Agency located at 1000 Colonial Farm Road, McLean, Virginia, 22101 The African American woman (name unknown) described in line eight (8) of this complaint is an employee of the Central Intelligence Agency and the Plaintiff reasonably believes this woman is coordinating this harassment with other Central Intelligence Agency employees as this is occurring twenty-four (24) hours a day and seven (7) days a week.

**FACTS**

6. The Defendants, orchestrate and implement a campaign of ongoing twenty-four (24) hours a day, seven (7) days a week of harassment, stalking and surveillance, collectively known as "gang stalking" that are violating Federal Laws and the Constitution of the United States.

7. Gang Stalking involves groups of individuals (gang stalking groups) operating territorially and nationwide, and, in communication and collusion with each other, to violate the civil rights of, and disrupt, destabilize and finally destroy individuals who are put on a Stalking List for

various reasons. The gang stalking groups use both intensive physical and electronic surveillance means to do this... including], but not limited to: street theatre, in which targets of gang stalking are subjected in public to rudeness, loud speaking and personal references to themselves and their private activities by persons within the gang stalking conspiracy; [and] related flash mobbing, or the coming together of an often large group of individuals in the gang stalking conspiracy to disrupt, intimidate, harass and otherwise confuse a gang stalking victim…." **(See Attachment A)**. The Department of Justice defines the term "stalking" means engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for his or her safety or the safety of others or suffer substantial emotional distress. (**See Attachment B).**

8. The Plaintiff's targeting of covert/overt harassment began at the University of Maryland - College Park's Spring Career Fair in 2013 when Plaintiff submitted to employment to various organizations including the Central Intelligence Agency (CIA). For unknown reasons an employee of the Central Intelligence Agency began to follow Plaintiff closely behind his back and humming in a loud manner. This Central Intelligence Agency employee is identified as an African American woman who is approximately 5'9 in height. These actions by this employee was a demonstration of the Plaintiff's future ongoing relentless harassments, threats, stalking and surveillance that was to occur. These actions that the Central Intelligence Agency's employee demonstrated upon the Plaintiff was repeated in an exact manner by dozens of other individuals at various other locations including but not limited to Plaintiff's place of grocery shopping, dining, and places of errands.

9. Subsequent to the aforementioned demonstration of Plaintiff's initial targeting by the Central Intelligence Agency, the Plaintiff has been subjected to coordinated harassment and

threats by random enlisted individuals as this occurs at Plaintiff's neighborhood in Brookeville, Maryland and outside of his neighborhood. The Plaintiff's place of residence is under surveillance by unknown surveillance technology(s), as the Plaintiff is being made aware of his covert surveillance through his electronic harassment being implemented by very low frequencies. The electronic harassment by very low frequencies are "pulsing" noises that are being directed at Plaintiff though the electromagnetic spectrum at the range of 5 kHz which are imperceptible to others.

10. The Plaintiff has been gang stalked across the state lines of Maryland as this has occurred in Delaware, Pennsylvania, New Jersey, New York, Washington D.C., Ohio, Indiana, and Illinois. The Plaintiff in an attempt to elude these harassments, threats and surveillance moved from his residence in Brookeville, Maryland to Chicago, Illinois. These harassments, threats and stalking occurred in Chicago, Illinois.

11. Frequency Harassment can scientifically be described as the Microwave Auditory Effect. This was initially discovered by Dr. Allen Frey in 1962. **(See Attachment C).** *The microwave pulse, upon absorption by soft tissues in the head, launches a thermoelastic wave of acoustic pressure that travels by bone conduction to the inner ear. There, it activates the cochlear receptors via the same process involved for normal hearing.* **(See Attachment D).** *Effective radiofrequencies range from 2.4 to 10000 MHz, but an individual's ability to hear RF induced sounds is dependent upon high frequency acoustic hearing in the kHz range above about 5 kHz.* **(See Attachment E).**

12. There are numerous other individuals residing within the United States that are experiencing some form of gang stalking and frequency harassment (**See Attachment F).** A notable individual that was being targeted for frequency harassment and gang stalking was

Washington Navy Yard Shooter Aaron Alexis. In 2013 Aaron Alexis killed twelve (12) people at Washington Navy Yard and prior to the shooting he was complaining of frequency harassment and gang stalking. On his shotgun Aaron Alexis etched "ELF" an abbreviation for Extremely Low Frequencies in which he was implying his frequency harassment. The Federal Bureau of Investigations wrote him off as being "delusional" and did not investigate further into this. **(See Attachment G)**. This is concerning to the Plaintiff as these rogue individuals within the Central Intelligence Agency who are orchestrating these gang stalking's and frequency harassment have continued their illegal activities after the Aaron Alexis incident for no clear reason (despite any reasoning this is illegal) other than for their own enjoyment. They have continued to conduct this on numerous other individuals including myself with the due disregard for human life, U.S. laws and the U.S. Constitution. These rogue Central Intelligence Agency employees pose a threat to the United States National Security. The Plaintiff is concerned that a repeat of the Aaron Alexis incident could occur again if no action is taken to bring these perpetrators to justice as this is continuing to occur with numerous other individuals. The Plaintiff - Tanveer S. Majid does not now and never will in the future be a threat to anyone or anything in any way shape or form.

13. A detailed affidavit by Ted L. Gunderson a retired Federal Bureau of Investigations - Bureau Chief, Senior Special Agent in Charge, Head of the Los Angeles FBI Field Office explains the aforementioned illegal activities. **(See Attachment H)**.

14. The Plaintiff has consulted with Private Investigator John B. Lopes of The Agency, Inc. Private Investigators in Maryland and Virginia (Maryland State License # 106-2340, Virginia State License # 11-4330, District of Columbia License # 0813). John B. Lopes confirmed that these events are occurring towards Plaintiff. John B. Lopes has written a detailed article explaining the aforementioned illegal activities. **(See Attachment I)**.

15. Plaintiff in Summer of 2017 contacted the Office of Inspector General for the Central Intelligence Agency and spoke to an individual named "Will." Will stated to Plaintiff that necessary actions would be undertaken to halt Plaintiff's targeting and gang stalking, Plaintiff's targeting / gang stalking never ceased. Plaintiff again contacted the Office of Inspector General for the Central Intelligence Agency in Summer of 2019 and spoke to an individual named, "Nick." Nick acknowledged that Central Intelligence Agency does target individuals but referred Plaintiff to law enforcement for further action.

16. Plaintiff's computer is remotely being monitored. On November 13 – 15 2018, Plaintiff created an account with U.S. Office of Special Counsel and attempted to file a complaint against the Central Intelligence Agency. Plaintiff account was hacked into in an attempt to deter Plaintiff from filing a complaint. **(See Attachment J).**

17. On November 18, 2018, Plaintiff filed a complaint with the United States Department of Justice. On February 1, 2019, the Department of Justice replied that Plaintiff does not have evidence to warrant action by their office and stated that Plaintiff has already contacted the proper authorities implying the Central Intelligence Agency's Office of Inspector General. The Plaintiff as prior stated contacted the Central Intelligence Agency's Office of Inspector General (Nick) who referred Plaintiff to law enforcement. As Department of Justice mentioned that Plaintiff does not have evidence, Plaintiff provided proper documentation proving that the illegal activities are occurring. It is extremely difficult to provide physical evidence against the gang stalking / targeting being orchestrated against Plaintiff by rogue employees of the Central Intelligence Agency because of their expertise in leaving no tangible evidence. During this time Plaintiff was extraordinarily harassed and threatened to dissuade Plaintiff from filing a complaint. **(See Attachment K).**

18. On December 5, 2018 Plaintiff felt a burning sensation on his back. Plaintiff immediately realized that he was being assaulted by radio frequency as this has occurred to Plaintiff 2-3 times before and Plaintiff had difficulty figuring out what it was. Plaintiff immediately grabbed his radio frequency detector and Plaintiff's radio frequency detector registered a full alert to the exact site of Plaintiff's assault. **(See Attachment K-1).**

19. On October 11, 2019 Plaintiff contacted United States Senator for Maryland the Honorable Ben Cardin. Plaintiff submitted the same information as mentioned in line 17. On January 24, 2020, Plaintiff received a response from the Honorable Ben Cardin's office a letter from the Federal Bureau of Investigations stating that Plaintiff's complaint is not within the Federal Bureau of Investigation's jurisdiction. This is on the contrary as the Plaintiff's complain does fall within the Federal Bureau of Investigation jurisdiction and the Plaintiff has clearly demonstrated in his complaint of Federal Law violations and the FBI's reply falls under the Willful Blindness Doctrine. The Plaintiff is concerned as with the Aaron Alexis incident of the refusal of the Federal Bureau of Investigation to investigate these complaints and to halt these illegal activities. **(See Attachment L).**

20. During the time Plaintiff contacted United States Senator Honorable Ben Cardin, the Plaintiff was once again extraordinarily harassed and threatened to dissuade Plaintiff from filing a complaint, including staged vehicular collisions threats against Plaintiff. The Plaintiff this time has managed to capture some of these incidents on video. **(See Attachment M).**

21. Plaintiff's targeting / gang stalking is a variation of the Central Intelligence Agency's previous MKULTRA program in which the agency was supposed to have halted in 1973. **(See Attachment N).**

22. The Plaintiff is currently enduring death threats to dissuade Plaintiff from filing this lawsuit.

23. Plaintiff has fully exhausted his legal remedies to solve this issue.

## VIOLATIONS OF THE LAW

24. The Central Intelligence Agency has violated 18 U.S. Code § 2261A. Stalking.

25. The Central Intelligence Agency has violated 18 U.S. Code § 2511. The Wiretap Act.

26. The Central Intelligence Agency has violated Executive Order 13470.

27. The Central Intelligence Agency has violated 18 U.S. Code § 113. Assaults within maritime and territorial jurisdiction.

## RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

1. Order the Central Intelligence Agency to cease and desist all surveillance, harassment, threats to Plaintiff as no government body is currently taking a holistic or proactive view of Plaintiff's targeting / gang stalking.

2. Order an award for Plaintiff's damages of substantial emotional distress, continuously fearing for his safety, unanswered crimes being committed against him and disruption of his life for the past seven (7) years due to the aforementioned facts/violations of the laws in the amount of seven million dollars ($7,000,000).

3. Grant any further relief as this Court may deem just and proper.

**PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE – RULE 38**
**THE PLAINTIFF DEMANDS A JURY TRIAL.**

***ALL ATTACHMENTS WERE SUBMITTED WITH THIS COMPLAINT ON A CD***

RESPECTFULLY SUBMITTED this 27th day of January, 2020.

Tanveer S. Majid
18903 Abbey Manor Drive
Brookeville, MD 20833-3247
Tel: (240) 753-2960
Email: Planters00000@gmail.com